# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) No. 21-cr-62-JJM-PAS |
| | ) |
| ANDRES GARAY, | ) |
| Defendant. | ) |
| | ) |

### <u>REVISED</u> MEMORANDUM AND ORDER[1]

JOHN J. MCCONNELL, JR., United States District Chief Judge

Before the Court is Defendant Andres Garay's Motion to Suppress based on his detention and the search and seizure of his car. ECF No. 54. Mr. Garay alleges that there was no probable cause for his arrest and therefore the evidence derived from his arrest is the fruit of the poisonous tree. *See id.* at 1–2. The government contends that leading up to Mr. Garay's arrest, police made various observations of Mr. Garay and a gray Toyota Camry that led them to suspect that he was involved in a drug trafficking conspiracy with Edgar Medina—a conspiracy that involved two armed men abducting a United States Postal Service ("USPS") employee. *See* ECF No. 55 at 1.

## I.    BACKGROUND[2]

Two unidentified individuals abducted a USPS employee at gunpoint. During the abduction, the two individuals asked the USPS employee about a package that

---

[1] This Memorandum & Order ("M&O") replaces the M&O filed on August 18, 2022. ECF No. 68.

[2] Because the parties both rely on the affidavit of Postal Inspector Richard F. Atwood (ECF No. 55-1) for their facts, the Court will do the same.

the Post Office had delivered to an address on Melrose Avenue in Providence, Rhode Island from Puerto Rico.

After speaking to witnesses about the abduction of the postal employee, investigators searched USPS proprietary databases for inbound parcels from Puerto Rico that might be connected to folks involved in the parcel previously delivered to Melrose Avenue. The investigators found that one person (i.e., the same IP address) inquired into the tracking status of two packages: one to be delivered to Melrose Avenue ("Melrose Ave Parcel") and one to be delivered to an apartment on Harris Avenue ("Harris Ave Parcel"). Both packages were shipped from Puerto Rico.[3] "[T]he handwriting on the label for both parcels, based on [the] training and experience [of Inspector Atwood], appeared to be the same."[4] ECF No. 55-1 at 4. One of the names associated with the Melrose Ave Parcel was Mr. Medina, and the name associated with the Harris Ave Parcel was Mr. Medina's mother. Shortly after the Harris Ave Parcel was delivered, Mr. Medina's mother retrieved the package from the apartment mailbox, and then an individual in a gray Toyota arrived at the building. That

---

[3] "Despite being sent on the same date, the parcels listed different senders, were sent from different post offices in Puerto Rico, and/or were sent to different recipients and/or address in Rhode Island. However, the parcels were tracked by the same IP address, causing officials to believe that the parcels were related, despite efforts of the sender(s) to conceal the connection between the parcels." ECF No. 55-1 at 4 n.1.

[4] The inspector's statement that the handwriting seemed similar is challenged by Mr. Garay because the inspector is not a handwriting expert. But, to determine probable cause, a trained law enforcement officer's (or perhaps even a lay person's) opinion that handwriting is similar is a reasonable factor to be considered. As the government correctly points out, "general handwriting comparisons are proper even for jurors, expert opinion . . . is not necessary." ECF No. 160 at 4. *See, e.g., United States v. Keene*, 341 F.3d 78, 84 (1st Cir. 2003).

individual walked into the apartment and left soon after "carrying a bag with a large item inside." *Id.* at 6.

Further, a review of USPS database showed that a parcel from Puerto Rico was delivered to Mr. Medina at George Waterman Road, Johnson, Rhode Island ("GW Road Parcel") with handwriting resembling the Melrose Ave Parcel and the Harris Ave Parcel. *Id.* at 6-7.

Postal inspectors came to learn that another parcel was shipped to "Mr. Medina [on] George Waterman Rd Johnston, RI 02919," ("GW Parcel 2"). *Id.* at 8. "A review of USPS databases . . . revealed [that] the return address did not exist."[5] *Id.* at 8. Inspector Atwood "learned that either the same individual or device that was querying the status of GW PARCEL 2 . . . was also querying the status of a[nother] parcel shipped from Puerto Rico" to an address on Atlantic Avenue in Providence ("Atlantic Ave Parcel"). *Id.* at 8–9. Again, the return address for the Atlantic Ave Parcel did not exist. Furthermore, "the same individual or device that was querying the status of the ATLANTIC AVE PARCEL was also querying the status of a parcel" shipped on the same day from Puerto Rico to an address on Congress Avenue in Providence ("Congress Ave Parcel"). *Id.* at 8. Once more, the return address for the Congress Ave Parcel did not exist.[6]

---

[5] "The sender's name . . . was the same last name as an individual who received mail at . . . George Waterman Road." ECF No. 55-1 at 8.

[6] The individuals to whom the Atlantic Ave Parcel and the Congress Ave Parcel were shipped did not live there. "[N]arcotics traffickers often use fictious sender names, along with existing return addresses, on parcels containing controlled substances or proceeds from the sale of controlled substances." ECF No. 55-1 at 4 n.1.

A Magistrate Judge authorized search warrants for the GW Parcel 2, the Atlantic Ave Parcel, and the Congress Ave Parcel. A Rhode Island State Trooper's narcotic trained K-9 "reacted in a positive manner" to each parcel, "indicating the presence of a narcotic odor." *See id.* at 10–11. The police then executed the search warrant, revealing all three parcels had "a white powdery substance, which field tested positive for cocaine. The collective weight from all three parcels was 3.25 kilograms (3250 grams)." *Id.* at 11.

On the day these parcels were to be delivered, surveillance was set up around the George Waterman Road residence. Mr. Garay arrived at roughly 8:30 a.m. in a gray Toyota Camry. There, an individual met with both Mr. Medina and Mr. Garay outside. Mr. Garay then left the George Waterman Road location and was seen on Congress Avenue later that morning. The Toyota Camry was parked down the street from the package's destination. Mr. Garay walked down the street, and turned around, returning to his car. He "exit[ed] the parking spot, travel[ed] past [the] Congress Avenue [delivery location] at a slow rate of speed, and later return[ed] to the same parking spot." *Id.* at 12. After the police took Mr. Medina and another confederate into custody, "the surveillance team then responded to the Toyota Camry . . . . occupied by [Mr.] Garay and took him into custody." *Id.* at 15.

The police then searched Mr. Garay's Toyota Camry. Law enforcement officials uncovered

> one black expendable baton . . ., one black Taser . . . and two black surgical masks . . .. The black surgical masks match the description provided by [the USPS worker] VICTIM-1 as being worn by the individuals who held him at gunpoint.

*Id.* at 15.

The grand jury issued a Second Superseding Indictment charging Mr. Garay with conspiracy to possess with intent to distribute five kilograms or more of cocaine, kidnapping, possession with intent to distribute five hundred grams or more of cocaine, and attempted possession with intent to distribute five hundred grams or more of cocaine. ECF No. 81 (Counts 1-4).

## II.  DISCUSSION[7]

Mr. Garay alleges that the police did not have probable cause to arrest him and therefore the Court should suppress the evidence gathered from a post-arrest search of his car his car as the "fruit of the poisonous tree."

"Law enforcement officers may effect warrantless arrests provided that they have probable cause to believe that the suspect has committed or is committing a crime." *United States v. Martinez-Molina*, 64 F.3d 719, 726 (1st Cir. 1995). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would

---

[7] An evidentiary hearing is not needed here because the Court has determined that Mr. Garay has not made a "sufficient threshold showing that material facts were in doubt or dispute." *United States v. Allen*, 573 F.3d 42, 50 (1st Cir. 2009). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief.'" *United States v. Francois*, 715 F.3d 21, 32 (1st Cir. 2013) (quoting *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996)) (upholding district court's decision to forgo evidentiary hearing on motion to suppress)). The Court grants Mr. Garay's request to supplement the record with the inventory sheet. ECF No. 62 at 1.

believe the suspect committed or was committing a crime." *United States v. Centeno-Gonzàlez*, 989 F.3d 36, 45 (1st Cir. 2021) (quoting *United States v. Burhoe*, 409 F.3d 5, 10 (1st Cir. 2005)). "Probable cause is also a 'commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.'"[8] *United States v. Burhoe*, 409 F.3d 5, 10 (1st Cir. 2005) (alterations in original) (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). Therefore, "[p]robable cause must be evaluated in light of the totality of circumstances." *United States v. Uricoechea-Casallas*, 946 F.2d 162, 165 (1st Cir. 1991).

Mr. Garay argues that there was insufficient information before his arrest that "implicates [him] in any criminal activity." ECF No. 54 at 7. As a result, he argues, his arrest was without probable cause. On the other hand, the government responds by arguing that the counter-surveillance of Mr. Garay provided trained law enforcement officers with probable cause. The government supplements this with the fact that Mr. Garay "met with [Mr.] Medina and a third person, and less than two hours later parked outside 102/104 Congress Ave, where another of the drug parcels was destined to be delivered—consequently, to a person not associated with that address." ECF No. 55 at 4.

---

[8] This reasonably prudent person is that of a reasonably prudent police officer. As the government notes in their brief, this prudence allows police officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." ECF No. 55 at 3 (internal quotations omitted) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

The Court finds that a reasonably prudent officer would have, and did have, probable cause to arrest Mr. Garay based on the "totality of the circumstances." Mr. Garay's actions conducting surveillance in support of drug deliveries on June 8, 2021, the morning of his arrest, when combined with the investigative information the officers had obtained about the packages, meets the probable cause standard.

As to the packages, the handwriting on the Melrose Ave Parcel and Harris Ave Parcel appeared to be similar. One individual queried the status of both packages, despite them being shipped to  different addresses.[9]  The GW Parcel 2[10] was discovered to contain cocaine, and the handwriting on the Harris Ave Parcel, the Melrose Ave Parcel, and the GW Road Parcel were similar. A reasonable officer could conclude that these packages were likely to contain illegal drugs.

As to Mr. Garay's movements in the immediate area of where parcels containing cocaine were scheduled to be delivered that day and law enforcements' training and experience, led the investigators to reasonably conclude that Mr. Garay's behavior was consistent with counter-surveillance. That Mr. Garay remained in the parked gray Toyota Camry, a vehicle already associated with the drug trafficking operation, for several more hours until the Congress Ave Parcel was delivered, indicates to experienced investigators that Mr. Garay was acting as a lookout and

---

[9] "[T]he parcels were tracked by the same IP address, causing officials to believe that the parcels were related, notwithstanding efforts of the sender(s) to conceal the connection between the parcels." ECF No. 55-1 at 4 n.1.

[10] The GW Parcel 2 had a return address from A. Parsons in Puerto Rico. Given GW Parcel 2's seeming connection to the Harris Ave Parcel and the Melrose Ave Parcel, and GW Road Parcel's connection to GW Parcel 2, it is reasonable to conclude that they are all related.

waiting for the drug Congress Ave. Parcel to arrive.[11]  When considered with Mr. Garay's "counter-surveillance" around the delivery site for the Congress Ave Parcel, a reasonably prudent officer could "believe the suspect had committed or was committing a crime."  The inference is that Mr. Garay was on the lookout for the delivery of packages containing the same contents as packages previously delivered to Mr. Medina from Puerto Rico.

Thus, the Court finds that there was probable cause of the police to arrest Mr. Garay.[12]

## III.  CONCLUSION

When taken in their totality, the circumstances at the time of the arrest and their investigative facts uncovered beforehand, tend to suggest that Mr. Garay was involved in a drug conspiracy with Mr. Medina.  As a result, the police had probable cause to arrest Mr. Garay and therefore the evidence before the Court is not be suppressed.  The Court DENIES Mr. Garay's Motion to Suppress.  ECF No. 54.

---

[11] Mr. Garay points out that "government agents had stopped another person in the neighborhood that morning for behavior substantially similar to [Mr.] Garay's." ECF No. 118 at 3.  The facts that law enforcement may have suspected another of committing a crime who in fact was innocent, does not negate the totality of the circumstances that lead them to believe, through commendable police work, that Mr. Garay was involved in a drug conspiracy.

[12] Mr. Garay also argues that the police exceeded their constitutional scope in searching his car.  But an officer may search the entire automobile if "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009).  As reflected above, it is reasonable to presume that Mr. Garay retrieved a package from Mr. Medina's mother containing drugs in his Toyota Camry. Indeed, it is part of the conspiracy.  As a result, it would be reasonable for officers to search his entire car for the package or indications towards its contents.  Thus, the search of Mr. Garay's entire automobile did not violate the Fourth Amendment, nor were its contents fruit of the poisonous tree

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Chief Judge


August 22, 2022