UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 21-CR-00062-JJM-03 |
| | : | |
| ANDRES GARAY | : | |

**MEMORANDUM AND ORDER DENYING MOTION FOR BAIL**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

I.    **Background**

This case alleges a conspiracy among five defendants to use the United States Postal Service to engage in significant trafficking of cocaine mailed from Puerto Rico and to aid and abet the kidnapping of a postal worker when one of the packages was delivered empty. At arrest on June 9, 2021, Defendant Andres Garay was initially detained based on the rebuttable presumption triggered by the offense then charged – conspiracy to traffic 500 grams or more of cocaine. Defendant did not argue for release. On November 2, 2022, the grand jury found probable cause and returned the Second Superseding Indictment ("SSI") (ECF No. 81) charging Defendant and four coconspirators with four offenses. Three of these are Counts based on drug trafficking: Count 1, conspiracy to traffic five kilograms or more of cocaine; Count 3, trafficking 500 grams or more of cocaine; and Count 4, attempted trafficking 500 grams or more of cocaine. Id. In Count 2, the SSI charges Defendant and others with the offense of aiding and abetting the kidnapping of a letter carrier employed by the United States Postal Service. Id.

Pursuant to the Bail Reform Act ("BRA"), all four offenses charged in the SSI contemplate that a detention hearing is authorized. 18 U.S.C. § 3142(f)(1)(A), (B), (C), (D). The three drug trafficking offenses carry the rebuttable presumption that no condition or combination of conditions will reasonably assure public safety or the appearance of Defendant;

the kidnapping offense does not.  18 U.S.C. § 3142(e)(3)(A).  The drug charges carry mandatory minimum sentences upon conviction of ten years (Count 1) and five years (Counts 3 and 4).  On May 9, 2023, the government filed a notice of prior conviction as to Defendant, based on which the mandatory minimum term of incarceration for Count 1 is fifteen years and for Counts 3 and 4 is ten years.  ECF No. 103 ("Notice of Enhanced Penalties").  Because of the drug charges, the parties agree that the estimated guidelines range applicable to Defendant is likely to be significant, "around twenty years" of incarceration according to Defendant, between 135 and 262 months of incarceration according to the government.

After the grand jury returned the SSI but before filing of the Notice of Enhanced Penalties, Defendant moved for bail for the first time.  ECF No. 93.  In support, he argued that the government's evidence against him is circumstantial and weak and that he has strong ties to Rhode Island and could present a release plan (residence and employment) adequate to support the setting of conditions.  Id.  Following briefing (including supplemental briefing by Defendant) and a hearing, the Court issued the Amended Detention Order on February 23, 2023.  ECF No. 98.  In it, as to the nature and circumstances of the charged offenses, the Court found that they include a crime of violence (aiding and abetting kidnapping) and serious allegations of drug trafficking, which "ha[ve] sufficient weight both as to drug trafficking and aiding and abetting the kidnapping as to create significant concerns both as to flight and danger to the community." Id. at 3.  As to Defendant's history and characteristics, the Court found that Defendant is a poor candidate for release.  First, the Court focused on Defendant's two prior convictions for drug trafficking and pattern of violating supervised release (including drug trafficking while on supervision) and his lack of meaningful past employment.  Collectively the Court found that this evidence clearly and convincingly established that Defendant's release would likely lead to

continued drug trafficking, which poses significant danger to the public.  Regarding both danger and risk of flight, the Court acknowledged Defendant's extensive family ties in Rhode Island, but focused on the reality that these ties had no impact on Defendant's past drug trafficking, as well as that the current set of offenses alleges a drug trafficking conspiracy and a kidnapping committed together with charged and uncharged individuals who are Defendant's family members.  Defendant's substance use problem (alcohol) was treated as a minor factor.  The Court ordered continued detention "[m]ore significantly," based on the "danger posed to the community by Defendant's persistent involvement in drug trafficking [that] cannot adequately be addressed by conditions," as well as that "Defendant is not likely to comply with Court-ordered conditions, so that there is risk of flight that conditions would be insufficient to address."  Id.

Now pending is Defendant's renewed motion for bail (ECF No. 270), filed on February 12, 2024.[1]  It is based on two circumstances that Defendant alleges have materially changed since the Court entered the Amended Detention Order on February 23, 2023:

(1)    On January 23, 2024, the Court granted in part the motion to suppress filed by Defendant and other alleged conspirators.  United States v. Medina, ___ F. Supp. 3d ___, No. 21-CR-62-JJM-PAS, 2024 WL 246614 (D.R.I. Jan. 23, 2024), reconsideration denied, ECF No. 289 (D.R.I. Mar. 12, 2024), notice of appeal filed, ECF No. 292 (D.R.I. Mar. 21, 2024).  Defendant argues that, by making

---

[1] The BRA contemplates that "[t]he [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  United States v. Szpyt, No. 2:11-CR-228-GZS, 2013 WL 4039412, at *2 (D. Me. Aug. 7, 2013) (quoting 18 U.S.C. § 3142(f)(2)).  The Court finds, and the government does not dispute, that Defendant's new information is material and supports the reopening of Defendant's detention hearing.

certain suppressed evidence[2] inadmissible as to him, the suppression order

significantly dilutes the weight of the evidence against him and undermines the

Court's Amended Detention Order finding that the evidence "has sufficient weight

both as to drug trafficking and aiding and abetting the kidnapping as to create

significant concerns both as to flight and danger to the community."  ECF No. 98

at 3.  He also contends that the remaining "untainted"[3] evidence is so weak and

circumstantial that the government should not be afforded the benefit of the

rebuttable presumption of dangerousness and flight.

(2)    Defendant has now been detained for over thirty-three months and the trial is

likely to continue to be delayed, perhaps for an extended period because the

government represents that it is considering an appeal.[4]

In addition to these new circumstances, as a result of the intensity of the focus during the

proceedings in connection with this bail motion on the untainted evidence against Defendant, the

Court noted the government's allegation that it has untainted evidence of Defendant's 2020/2021

travel to Puerto Rico while on supervision for his second drug trafficking conviction.  The Court

asked Pretrial Services to investigate the facts and to report to the parties and to the Court

regarding whether and to what extent this travel impacts the BRA analysis.  This information is

addressed below as a third circumstance not previously considered that impacts the BRA

determination.  Finally, the Court asked about Defendant's conduct during detention and was

_____

[2] The suppressed evidence that is now inadmissible as to Defendant includes the content of the phones found in the vehicle Defendant was driving at arrest, as well as certain cell site location information.  Medina, 2024 WL 246614, at *18, 26.

[3] I use this term to refer to evidence that is potentially admissible despite the suppression order.

[4] At the time Defendant presented his arguments to the Court the government had not yet appealed; as of the writing of this decision, however, the Government has filed an appeal of the suppression order.  See Medina, No. 21-CR-62-JJM-PAS, ECF No. 292.

advised that Defendant has had no discipline issues. In addition, Defendant asked the Court to consider a Defendant Exhibit (ECF No. 288-1) evidencing that, between April and August 2023, he took advantage of many E-Learning courses while detained. This information is addressed below as a fourth new circumstance impacting the BRA determination.

In light of the serious concerns raised by this bail motion, the Court received briefs, conducted a lengthy bail hearing on March 4, 2024, and ordered the parties to file supplemental letters with case citations regarding specified points of applicable law. Moments prior to the commencement of the hearing and confirmed during the hearing, the Court learned that two matters critical to the setting of conditions – an acceptable residence[5] and a potentially viable plan for employment[6] – had not been presented to Pretrial Services. Therefore, the Court continued the bail hearing for two weeks to March 20, 2024, to allow time for Defendant to develop a concrete proposal and for Pretrial Services to investigate. I further advised the parties that, upon receipt of their supplemental letters (due on March 7, 2024), I would carefully review the law and the facts in light of the four new circumstances. If this analysis resulted in the conclusion that the Amended Detention Order should continue based on the finding that no condition or combination of conditions would be adequate to address the danger and/or risk of

---

[5] Defendant's motion for bail proposed that he would reside with his mother but, as Pretrial Services informed the Court, neither the mother nor Defendant's sister responded to Pretrial Services' attempts to review this proposal. Therefore, Pretrial Services was unable to advise the Court regarding its appropriateness. The government has argued vociferously that this residence plan is not appropriate *inter alia* because, in 2010, Defendant was found living with his mother in an apartment with a handgun, cocaine and drug trafficking paraphernalia and, in 2021, Defendant's brother had been living with their mother and storing drugs in the mother's residence prior to his arrest as a coconspirator in this case.

[6] Defendant's motion for bail proposed that he could return to working as an "independent contractor for Amazon," ECF No. 270 ¶ 9, which he reported to Pretrial Services he has done in the past, but there was no investigation regarding whether Amazon might have such a job available or whether it would rehire him with these charges pending. Even more important, there is no information regarding what exactly Defendant might do as an Amazon "independent contractor." As the parties were advised, the Court would have grave reservations about releasing this Defendant to do work that involves driving around with packages to deliver to people's homes.

flight posed by Defendant's release, so that there is no need for the parties and Pretrial Services to invest significant resources in developing a plan for a proposed residence and potential employment, I told the parties I would so advise them and cancel the continuation of the bail hearing.  Having reached that determination for the reasons set forth below, I am issuing this Memorandum and Order and have canceled the hearing to consider release conditions.

## II.    New Circumstances, Applicable Law and Analysis

### A.    Suppression of Phone Content and Location Information

#### 1.    Applicable Law

The BRA's rebuttable presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial once the government has established probable cause that the alleged offender committed such an offense.  See United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010) (citing United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985)) ("Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found."), abrogated on other grounds by United States v. O'Brien, 895 F.2d 810 (1st Cir.1990).  The presumption is rebuttable and, in light of the presumption of innocence, it remains the government's ultimate burden to prove that no conditions of release can adequately assure that the defendant will appear (a preponderance burden) and the safety of the community (a clear and convincing burden).  United States v. Cotto-Velazquez, Crim No.: 23-238 (SCC), 2024 WL 770758, at *1 (D.P.R. Feb. 23, 2024); see United States v. Travieso Ocasio, 7 F.3d 219, 1993 WL 405705, at *2 (1st Cir. 1993) (unpublished table decision) (preponderance standard for defendant's appearance); United States v. Davis, Criminal No. 23-cr-10018-DJC, 2023 WL 1970085, at *1 (D. Mass. Feb. 13, 2023) (clear and convincing standard for safety).

To rebut the presumption, a defendant has the light burden of going forward with at least some evidence.  <u>Jessup</u>, 757 F.2d at 384, 386-87.  Once a defendant has done so, the court must determine whether the government has met its burden of persuasion by considering the § 3142(g) factors; as to any offense that carries the rebuttable presumption, this determination should focus, *inter alia*, on "'the special features of [defendant's] case'" that take it outside "'the congressional paradigm.'"  <u>See Stone</u>, 608 F.3d at 946 (quoting <u>Jessup</u>, 757 F.2d at 387).  The BRA also directs that one of the § 3142(g) factors impacting the detention determination is the weight of the evidence of the offense; in addition, the court must consider the nature and seriousness of the danger to any person or the community that would be posed by release.  18 U.S.C. § 3142(g)(2), (4).  Detention hearings, however, should not become *de-facto* mini-trials during which a defendant's guilt or likelihood of conviction is debated; a grand jury indictment is sufficient to establish probable cause for purposes of detention and evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community. <u>United States v. Rodriguez-Adorno</u>, 606 F. Supp. 2d 232, 237 (D.P.R. 2009).  How to weigh each of the § 3142(g) factors remains within the discretion of the judicial officer making the review. <u>Id.</u> at 237 n.9.

Consistent with the warning of Congress against turning detention hearings into mini-trials, the BRA memorializes the fundamental axiom that the "[t]he rules concerning admissibility of evidence in criminal trials do <u>not</u> apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f) (emphasis added).  "[I]t is clear that section 3142(f)(2)(B)'s reference to 'the rules concerning admissibility of evidence in criminal trials' encompasses the Federal Rules of Evidence as well as constitutional rules, including the exclusionary rule under the Fourth Amendment."  <u>United States v. Burciaga</u>, No. 08 CR 1541

MV, 2011 WL 13285629, at *2 (D.N.M. July 29, 2011).  Thus, "it is not improper for the district court to consider suppressed evidence in evaluating the weight of the evidence for detention purposes while the appeal [of the motion to suppress] is pending."  United States v. Workman, 680 F. App'x 699, 701 (10th Cir. 2017) (per curiam) (internal quotation marks omitted) (citing United States v. Pina-Aboite, 97 F. App'x. 832, 835 (10th Cir. 2004) (per curiam)).  Further, the rebuttable presumption of detention is based on probable cause to commit specified offenses, which is not determined by evidentiary rulings, but rather is based on the indictment.  United States v. McCarty, No. CR. 08-00513 JMS, 2009 WL 5061577, at *3 (D. Haw. Dec. 24, 2009). As long as an indictment supported by probable cause remains viable, a suppression order does not impact it and the rebuttable presumption in favor of detainment still applies.  Id. at *3-4 (pending appeal of suppression order impacting all evidence against defendant, suppressed evidence considered; order of detention continued).  Consistent with this principle, in one of the first cases to apply the BRA, our Circuit held that evidence subject to a legal challenge was appropriate for consideration during the detention hearing.  United States v. Angiulo, 755 F.2d 969, 974 (1st Cir. 1985).  Angiulo leaves open whether and to what extent such evidence should be considered after "a court has decided that the material was not obtained legally."  Id.; see United States v. Duran, Cr. No. 1:09-MJ-243A, 2010 WL 1068177, at *2 (D.R.I. March 17, 2010); United States v. Reynolds, 609 F. Supp. 2d 108, 111 (D. Me. 2009).

Notwithstanding this foundational principle, the parties have brought to the Court's attention (and, as to one case, that the Court itself has found) a handful of out-of-circuit cases[7]

---

[7] Defendant also cites Szpyt, 2013 WL 4039412, but it is off the mark.  In Szpyt, the court had entirely dismissed the pivotal charge so that it disappeared as an "offense" supported by probable cause for purposes of applying the BRA's rebuttable presumption.  Id. at *4.  Nevertheless, while Szpyt does not involve suppressed evidence, it does cite, and I therefore have considered, cases dealing with suppressed evidence.  Id. at *6-7.  In addition, Defendant cites United States v. Chen, 820 F. Supp. 1205 (N.D. Cal. 1992), but it is not analogous either.  Chen is a case in which the court emphatically found that danger had never been a factor.  Id. at 1208.  Dealing only with risk of flight, the court held that the problem with release was that the financial surety requirement set by the court and the declining

that illustrate circumstances when courts have exercised discretion to consider the impact of a suppression order in revisiting the detention determination.  These courts have focused on the suppression order's impact on certain of the § 3142(g) factors, specifically the offense and particularly the rebuttable presumption that it triggers, the weight of the evidence and the nature and seriousness of the danger to any person or the community.  However, there is a unifying theme in these cases – in all but one, the suppression order did not just weaken the evidence but rather effectively removed from a future trial virtually all evidence essential to prove an offense that gives rise to a presumption of detention.  And in one, while the suppression order had not yet issued, trial admissibility was the subject of ongoing proceedings, which had exposed the untrustworthiness of evidence that the government conceded must be suppressed.  Further, in all but two of these cases, the court nevertheless continued pretrial detention.

In United States v. Fulgham, No. CR 12-0124 CW KAW, 2012 WL 2792439 (N.D. Cal. July 9, 2012), much or all evidence of drug trafficking was suppressed so that it was unlikely that the defendant could be convicted unless the suppression order were overturned on appeal.  Id. at *2.  As a result, the court held that the presumption of detention was not triggered.  Id. Nevertheless, the court held that consideration of the suppressed evidence was appropriate in determining the weight of the evidence and in that "consideration of the suppressed evidence [was] warranted under [a] cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety," including, the defendant's possession of a large quantity of drugs and multiple felony drug convictions, which established that "he might pose a danger to the community if released."  Id. at *2, 4 (emphasis added) (quoting United States v. Jay, 261 F.

---

value of defendants' real estate left them unnecessarily detained due to their financial inability to post the required bond.  Id. at 1210.  The suppressed evidence seemed to play only a passing role in the court's determination.  See id. at 1211-12.

Supp. 2d 1235, 1239-40 (D. Or. 2003)).  Despite detention having already lasted a year and a half, and a Ninth Circuit appeal of the suppression order pending, the court found that continued detention did not violate the defendant's due process rights and that detention should continue because no conditions could be fashioned to reasonably assure the defendant's appearance or the safety of the community.  Id. at *4-5.

In United States v. Burciaga, No. 08 CR 1541 MV, 2011 WL 13285629 (D.N.M. July 29, 2011), the court granted a motion to suppress all evidence of the heroin found in the defendant's vehicle, which was the basis for the offense that had triggered the rebuttable presumption.  Id. at *1.  While the appeal of the suppression order was pending, the court reconsidered detention; it acknowledged that the suppression of this evidence certainly impacted the weight of the evidence but held that the detention determination must continue to be informed by the rebuttable presumption, "'the nature and circumstances of the offense charged, including whether the offense . . . involves a controlled substance; as well as the defendant's community ties . . . [and] criminal history.'"  2011 WL 13285629, at *3 (quoting 18 U.S.C. § 3142(g)).  Accordingly, the court concluded that the defendant's history of drug offenses and his lack of ties to the District made him a flight risk "such that he cannot overcome the presumption of detention."  Id.

In United States v. Barner, 743 F. Supp. 2d 225 (W.D.N.Y. 2010), the court focused on the well-settled principle that the government "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community."  Id. at 228 (internal quotation marks omitted).  With detention approaching three years and an appeal of a suppression order pending, id. at 227, 231, coupled, with the government's concession that, if the suppression order were sustained, the indictment would be dismissed, id. at 227, the court declined to find that the case involved an offense that triggered the rebuttable presumption.  Id. at

229-30.  Noting that strong evidence increases both the risk of flight because of the motivation to flee a likely conviction and the likelihood of danger because future incarceration can trigger dangerous behavior, it held conversely that "little to no evidence" shifts the motivation to make a person "less likely to pose a risk of nonappearance or to be a danger to the community."  Id. at 233.  Based on this analysis, release conditions were set and the defendant was released.  Id. at 233-34.

In Jay, 261 F. Supp. 2d 1235, the government conceded that, without the suppressed evidence, it was unlikely the defendants would be convicted of the presumption-qualifying offenses.  Id. at 1237-39.  The defendants argued that, with suppression, the rebuttable presumption was not triggered, as well as that the suppressed evidence must be entirely ignored when considering the weight of the evidence to find whether defendants would pose a danger to the community if released.  Id. at 1239-40.  The court considered these arguments and found that the rebuttable presumption was not triggered.  However, in focusing on the § 3142(g) factor relating to community danger and in light of the "cost-benefit" analysis that the Supreme Court has established to determine what other use can be made of inherently trustworthy inculpatory evidence that has been deemed inadmissible at trial, id. at 1240 (citing United States v. Leon, 468 U.S. 897, 907 (1984)), the court held:

> A court should have as much information as possible to evaluate properly whether a defendant poses any risk of danger to the community if released.  Thus, even though this Court suppressed evidence for purposes of trial, that evidence may speak loudly concerning community safety because it involves convicted felons in unlawful possession of multiple weapons and cocaine.  The Court concludes, therefore, consideration of the suppressed evidence is warranted under cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety.  The Court, therefore, applies § 3142(g) to the pending Motions in light of the circumstances known to the Court, including the evidence that implicates both Defendants in the charged gun and drug crimes.

Id. at 1240 (emphasis added).  Despite a pending appeal of the suppression order extending the length of detention, the court ordered that detention should continue.  Id. at 1242.

Also instructive is a decision turned up by the Court's research issued by the District Court for the District of Colombia: United States v. Taylor, 289 F. Supp. 3d 55 (D.D.C. 2018).  In Taylor, the court reconsidered the detention decision of a magistrate judge following a suppression hearing at which the court heard evidence that "call[ed] into question the connection between [the defendant] and much, if not all, of the contraband at issue and that establishes a plausible link between the contraband and a third party," including evidence procured in contravention of Miranda (and therefore of questionable trustworthiness) that the government conceded should be suppressed.  Id. at 61, 64-65.  The court held that this new information did not alter the probable cause determination so that the rebuttable presumption remained in the case, but that it certainly must be considered in applying the "weight of the evidence" factor.  Id. at 64-65, 67.  Nevertheless, focusing on the BRA's provision eschewing application of the rules concerning admissibility, the court found that the fourth § 3142(g) factor – the nature and seriousness of the danger posed by release – permits such suppressible evidence to be considered in determining the danger posed to the community of releasing a defendant facing gun/drug trafficking charges that carry a sentence of ten years or more.  Id. at 70-72.  On balance, the court found that conditions could be set and defendant was released.  Id. at 72-73.

To summarize, when the BRA is interpreted in light of these cases, it is clear that the Court can exercise its discretion to continue to consider inherently trustworthy suppressed evidence for purposes of the BRA detention analysis, but also may disregard it, particularly where suppression has effectively eliminated from admission at trial all essential evidence of a particular charge.  In that event, as to that charge, the Court may decline to apply the rebuttable

presumption that the unprovable-at-trial offense would otherwise trigger.  And the Court may reweigh the evidence informing the flight/danger analysis in light of the impact of the far weaker case on the defendant's motivation to appear and to maintain good behavior.  However, as long as the charged offense remains supported by probable cause, and the danger to the community posed by release is serious, the Court may and should continue to consider inherently trustworthy suppressed evidence to evaluate properly whether release poses danger to the community.

2.    Facts and Analysis

Defendant argues that the evidence that is inadmissible as to him based on the suppression order, as well as evidence that he may yet move to suppress on other grounds not yet presented to the Court, leaves the government with a circumstantial case that is so insufficient that it no longer triggers the rebuttable presumption and that the weight of the untainted evidence is so slight that it no longer supports a finding that the danger and risk of nonappearance posed by Defendant's release cannot be addressed by conditions.  The government acknowledges that the suppression order has adversely impacted the strength of the evidence supporting the charged offense of aiding and abetting the kidnapping.  However, it argues vociferously that there is sufficient untainted evidence of Defendant's participation in three offenses based on the drug trafficking conspiracy to be characterized as "strong" for purposes of the BRA analysis.  Despite its concession that the quantum of evidence supporting the kidnapping charge has "taken a hit" due to the suppression order, the government points to the law summarized above and argues that it clearly permits the Court to consider the suppressed evidence, particularly with regard to whether release would expose the community to the danger of Defendant's continued drug trafficking.

Defendant does not materially disagree with the government's analysis of the impact of the suppression order – he all but acknowledges that the government still has ample circumstantial (though, as he has long asserted, weak) evidence of drug trafficking.  He contends that the suppression order has materially diluted the evidence of kidnapping against him, and that it will be diluted further by follow-on suppression motion(s) that he plans to file.  As to drug trafficking, Defendant essentially reiterates the arguments he presented during the proceedings that culminated in the Amended Detention Order.  Thus, he concedes, for example, that the government can still present at trial: the circumstances surrounding his arrest at the time of the controlled delivery of a kilogram of cocaine; his repeated travel to Puerto Rico; the mailing of drug packages from Puerto Rico and an attempt to send cash back to Puerto Rico by various coconspirators; the images of someone who looks like him (masked) picking up a suspected drug package from his cousin's (a coconspirator) mother; his presence in the area of delivery of another suspected drug package; and the items found in the vehicle Defendant was driving on arrest (not only the two phones, but also an expandable baton, can of defense spray and surgical masks that match the description of those used by the kidnappers).  Defendant argues that the damning evidence sent <u>to</u> his phones from the phones of other conspirators (which links him to the kidnapping, and which he lacks standing to suppress) will not be admissible because he expects to move to suppress it on other grounds.  Defendant further argues that he will be able to explain to the jury that his many contacts with coconspirators were the result not just of family relationships, but also because he was working for a legitimate business, the family window cleaning company.[8]  He contends that this far weaker case materially impacts his motivation to

---

[8] The Court notes that this representation clashes materially with the information that Defendant provided to Pretrial Services during his bail interview on February 17, 2023, when he was questioned about employment and provided detailed information about five different employers going back to 2007 but did not say that he had ever worked for the family window cleaning company, Northeast Window Cleaning, which has been linked to the drug trafficking

appear and defend through trial.  That is, the suppression order, coupled with Defendant's anticipated suppression of more evidence linking him to the kidnapping, has materially impacted the risk of flight in that his incentive now is to remain and see this case through to the end.

When the legal principles summarized above are applied to the facts of this case, the Court's path becomes clear.  This is not a case where all essential evidence of drug trafficking has been held to be inadmissible; indeed, as Defendant concedes, the circumstantial evidence of his participation in the drug conspiracy, which the Court previously found "sufficient" to support the Amended Detention Order, ECF No. 98 at 3, appears largely to remain available.  Further, it is the grand jury's finding of probable cause to charge the drug trafficking offenses in the SSI that triggered the rebuttable presumption and (since the Notice of Enhanced Penalties) the risk of an unusually lengthy sentence in the event of conviction; Defendant does not suggest that those Counts will be subject to dismissal or judgment of acquittal in light of the suppression order as in Fulgham and Burciaga, nor does the government concede (by contrast with Barner and Jay) that the suppression order means it cannot prove drug trafficking.  And it was drug trafficking that was the focus of the Amended Detention Order.  Specifically, it was drug trafficking, considered in light of Defendant's history and characteristics, particularly his criminal history and conduct on supervision, that the Court then found clearly and convincingly established that "the danger posed to the community by Defendant's persistent involvement in drug trafficking cannot adequately be addressed by conditions."  ECF No. 98 at 3.  Kidnapping, which the government concedes has "taken a hit" due to the suppression order, did not play a major role in the Amended

---

and kidnapping.  ECF No. 1-1 ¶¶ 10, 29.  With trust and truthful engagement with Pretrial Services essential to successful pretrial supervision, this seeming discrepancy raises concerns about the Court's ability to set conditions.  See United States v. Espitia Cuellar, 23-cr-116-WES-PAS-4, ECF No. 38 at 5-6 (D.R.I. Feb. 13, 2024) (detention ordered of defendant who provided false information during several pretrial services interviews, establishing that she cannot be trusted, which is essential to setting conditions).

Detention Order's danger analysis.  It does not trigger the rebuttable presumption and there is no representation regarding the length of the sentence to which it would expose Defendant.  Thus, even if the weight of the evidence of kidnapping were now deemed so weak as to be unlikely to result in conviction (which the government has not conceded) what remains (drug trafficking) is more than sufficient to support the Court's finding that the government has sustained its burden of clearly and convincingly showing that no conditions or combination of conditions could adequately address the danger that Defendant's release would pose.

Based on the foregoing, the Court finds that the rebuttable presumption arising from the grand jury's probable cause finding supporting the drug trafficking offenses remains in the case despite the suppression order (nor is it undermined if the suppressed evidence is ignored).  Further, despite the suppression order, the Court finds that the Leon cost-benefit analysis tips strongly in favor of continuing to use the suppressed evidence, which is inherently trustworthy, to evaluate properly the fourth § 3142(g) factor: whether Defendant's release poses the danger to the community of continued drug trafficking.  Jay, 261 F. Supp. 2d at 1240-42.  With these findings, to the extent that it rests on the suppression order, Defendant's motion for bail must be denied.  Alternatively and mindful of Angiulo's suggestion that suppressed evidence may appropriately be ignored post-suppression, the Court has examined whether, if the suppressed evidence[9] were to be excluded entirely from the detention analysis as to drug trafficking, the outcome would change.  The Court finds that it would not because the untainted evidence of drug trafficking remains sufficient to support both the rebuttable presumption and the Amended Detention Order's core finding that the danger of continued drug trafficking cannot adequately

---

[9] This analysis ignores only the suppressed evidence, not the evidence (principally impacting the weight of the kidnapping charge) that Defendant represents he plans to move to suppress.  Angiulo, 755 F. 2d at 974 (suppressible evidence should be considered "at least until a court has decided that [it] was not obtained legally").

be addressed by conditions. That is, when the Court declines to rely on the suppressed evidence with respect to the rebuttable presumption and danger to the community, the result is the same – the motion for bail is denied and the Amended Detention Order remains in effect.

The Court considers separately how the suppression order has affected the weight of the evidence and its impact on Defendant's motivation to remain, appear and defend (and be of good behavior while doing so). At first blush, there seems to be a somewhat more compelling argument that the suppression order clearly undermines the weight of the evidence in motivating Defendant to abscond, which is a factor that must be considered under § 3142(g)(2). This proposition is undermined, however, by the reality that, in this case, the motivation to flee is more logically linked to drug trafficking, which is largely unaffected by the suppression order, in that (unlike kidnapping) it is the charged offense that carries a significant risk of a very long sentence. Thus, when the suppressed evidence is excluded from consideration in determining Defendant's motivation to stay and defend, as the cases suggest it should be, the findings in the Amended Detention Order are nevertheless sustained.

At bottom, this is a case where the danger of continued drug trafficking was and remains the dominant reason for detention. Despite the suppression order, the Court can and, in these circumstances, should continue to consider the suppressed evidence, both as to the rebuttable presumption triggered by drug trafficking and as to the danger to the community due to drug trafficking. Further, the detention conclusion does not change when the suppressed evidence's unavailability at trial is considered in assessing its weight as impacting Defendant's motivation. And even if the suppressed evidence were to be entirely removed from consideration as Defendant argues, because it relates principally to kidnapping, the indicted offenses triggering the rebuttable presumption remain adequately supported by probable cause, the evidence of

danger to the community remains sufficiently strong and the untainted evidence is of sufficient weight to leave the Amended Detention Order in place.

## B.    Length of Time in Pretrial Detention

With one exception, discussed below, the length of detention is not a factor for the Court to consider in performing the BRA analysis because such adjudication should occur in the context of the Speedy Trial Act.  See United States v. Tortora, 922 F.2d 880, 889 (1st Cir. 1990) ("Congress conspicuously omitted any instruction to consider the potential length of detention as part of the pretrial release calculus."); United States v. Mubarak, Criminal Action No. 20-CR-10300-ADB, 2021 WL 242049, at *5 (D. Mass. Jan. 25, 2021) (challenges to the length of detention are best adjudicated in the context of the Speedy Trial Act).  In this case, despite the unusually long time that the case has been pending, the government estimates that less than half of the authorized time to trial under the Speedy Trial Act has expired and Defendant has not disagreed.  Moreover, with mandatory minimum sentences of ten to fifteen years arising from the drug trafficking offenses in light of the Notice of Enhanced Penalties (and estimated guidelines that are even longer), this is not a case where the period of detention begins to approach the total incarcerative sentence that is likely to be imposed.  Nor has Defendant articulated another basis in law for this Court to find that continued pretrial detention in the circumstances here violates his constitutional rights.  See, e.g., United States v. Benjamin-Hernandez, 49 F.4th 580, 585-87 (1st Cir. 2022) (addressing four-factor test employed to address speedy trial act challenges and finding that thirty-four-month delay did not violate Sixth Amendment speedy trial rights).  Therefore, I decline to order release that poses danger that cannot adequately be addressed by conditions based on the length of Defendant's detention.  See United States v. Onyobeno, 19-cr-115-JJM-PAS, ECF No. 126 at 11-12, adopted by text order (D.R.I. Dec. 1, 2022).

To counter this argument, Defendant relies on Chen, but it does not undermine this approach. In Chen, the court noted that, "[a]t some point, a defendant's Constitutionally-protected interests in due process and a speedy trial overshadow the other pretrial release issues." 820 F. Supp. 1210 (emphasis added). Chen finds that the "point" had been reached in the unique circumstances presented in that case; these include the defendants' lack of any criminal history, strong ties to the community and solid employment, the complete absence of danger and the impact on falling real estate values on the defendants' ability to post bond. Id. at 1208-10. Chen does not advance Defendant's cause in this case where danger is the dominant concern, and Defendant's history and characteristics do not support an order of release.

The exception is a factor that was in the background when the Court issued the Amended Detention Order – the pending violation proceeding in Defendant's 2014 case. See United States v. Garay, 14-cr-91-JJM, ECF No. 31. In that violation proceeding, the Court stayed the matter pending events in this case; Defendant did not argue for release and an order of detention was entered. Minute Entry of June 29, 2021. The statutory maximum period of incarceration applicable to those supervised release violations is three years. 18 U.S.C. § 3583(e)(3); Garay, 14-cr-91-JJM, ECF No. 31 at 4. Defendant has now been detained so long that he is nearing the maximum period of incarceration that could be imposed for violating his conditions of release. Unlike the situation that existed as of the entry of the Amended Detention Order in February 2023, the passage of time means that there is no longer a serious risk that the Court will set conditions in this case, in which the government bears the burden of persuasion, but continue the detention order in 14-cr-91-JJM, in which Defendant must shoulder the burden. Compare 18 U.S.C. § 3142(e), with Fed. R. Crim. P. 32.1. Therefore, while the Court certainly must still consider that Defendant was on federal supervision for heroin trafficking at the time of the

conduct in issue in this case, it will no longer consider the detention order entered in connection with the supervised released violation proceeding as a reason for continuing detention in this case.  However, the elimination of the detention order in 14-cr-91-JJM from the background does not adversely impact the analysis supporting the Amended Detention Order summarized above. Thus, this timing issue is not a reason to set bail conditions.

### C.    Unauthorized Trips to Puerto Rico During Supervision

Defendant was arrested on June 9, 2021.  At the time of arrest, he had been on federal supervision since August 20, 2019, following a 2015 conviction for trafficking heroin in 2014. At the time of the 2014 conduct, Defendant was on federal supervision following a 2011 federal conviction for trafficking cocaine and was subject to a 2013 state deferred sentence following a *nolo contendere* plea for fraud committed during employment (setting up false cell phone accounts and defrauding his employer of nine cell phones).  Probation's records reflect technical violations throughout the period of federal supervision that ended with the 2014 arrest.

During the period of federal supervision that ended with the 2021 arrest, Defendant's conditions included the requirement that he was prohibited from travelling outside the District of Rhode Island without the permission of the probation officer or the Court.  Garay, 14-CR-91JJM, ECF No. 28 at 3 (D.R.I. Apr. 17, 2015).  The supervision record for this period establishes that Defendant understood this condition and knew how to seek permission to travel in that, in June 2020, Defendant requested permission to drive to the Carolinas to pick up his son.  In connection with this request, Defendant completed the required forms and provided the required information; as a result, this request to travel was approved.

Pretrial Services has confirmed that Defendant never asked for permission to travel to Puerto Rico.  The government represents that the untainted evidence establishes that Defendant

traveled to Puerto Rico three times, in August/September 2020, in January 2021, and in May 2021.[10] The government further represents that there is evidence linking these trips to the drug trafficking conspiracy. Specifically, the August/September 2020 trip coincided with the attempted smuggling to Puerto Rico through Logan Airport of $40,000 in bulk cash; the January 2021 trip coincided with trips by two of Defendant's coconspirators; and the May 2021 trip coincided with the mailing from Puerto Rico to Rhode Island of two packages suspected to contain cocaine, one of which was retrieved by Defendant. Importantly, all three of these trips were taken <u>after</u> Defendant's trip to pick up his son for which he obtained permission. Collectively, this evidence clearly and unambiguously establishes that Defendant not only intentionally disregarded and blatantly violated this critical condition, but also that he was able to do so surreptitiously enough to evade detection of the unauthorized travel by his supervising officer. The fact that Defendant chose to obtain permission to pick up his son, but successfully duped his supervising officer so that he could repeatedly engage in unauthorized travel to Puerto Rico informs the BRA analysis regarding Defendant's trustworthiness to cooperate in supervision. The surreptitious nature of Defendant's conduct is also pertinent on the danger prong in that it tends to establish that these trips were not for a legitimate purpose thereby corroborating the government's contention that the trips were in furtherance of drug trafficking.

Piled on top of the history and characteristics analysis done for the Amended Detention Order, this evidence tips strongly in favor of continued detention. That is, when the Court was considering only Defendant's two prior convictions for drug trafficking, his state fraud conviction, his pattern of violating supervised release by drug trafficking while on supervision and by committing technical violations, and his lack of meaningful past employment, the Court

---

[10] In rebuttal, Defendant argued that there was no reason not to travel, not that the trips did not occur.

found that this evidence clearly and convincingly established that Defendant's release would likely lead to continued drug trafficking, which poses significant danger to the public. This new evidence establishes not only that Defendant cannot be trusted to comply with the requirements of supervision but also that he has the skills to evade detection when he intentionally and blatantly chooses not to comply. As this Court has repeatedly held, "[e]ven the Court's most powerful condition – home detention with GPS monitoring – is effective only with a trustworthy defendant committed" to compliance with the Court's requirements. Onyobeno, 19-cr-115-JJM-PAS, ECF No. 126 at 10.

### D.    Conduct While Detained

Defendant asks the Court to consider the many E-Learning courses he took during a five-month period – April to August 2023 – while at the Wyatt Detention Facility.[11] See Def. Exhibit ECF No. 287-1. Also to be considered is information elicited in response to my inquiry – that Defendant has been discipline-free throughout the thirty-three-month period of detention. This evidence is certainly positive in that it establishes that Defendant is an individual who can control his behavior and appropriately use his time when he chooses to do so. However, this evidence does not undermine the core showing made by the government – Defendant's pattern of persistently reverting to drug trafficking and successfully evading supervision to do so. Therefore, while laudable, Defendant's conduct while detained does not impact my determination that detention should continue.

### III.    Conclusion

Based on the foregoing, Defendant's motion for bail (ECF No. 270) is denied.

---

[11] The Court does not know why this cluster of activity seems to be time-limited to a few months in 2023. Mindful that there may be an explanation, I have not drawn the inference that Defendant failed to engage in available coursework before or after this five-month period.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 22, 2024